IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACI WATKINS, | : | Case No. 4:15-CV-00842 |
| Plaintiff | : | |
| | : | (Judge Brann) |
| v. | : | |
| SYNCHRONY BANK F/K/A GE CAPITAL RETAIL BANK, | : | |
| Defendant | : | |

**MEMORANDUM**
September 4, 2015

Before the Court for disposition is Plaintiff Staci Watkins' Motion To Dismiss Defendant's Counterclaim Pursuant to FED.R.CIV.P. 12(b)(1). (ECF No. 8). For the following reasons, Plaintiff's motion will be granted.

**I.    BACKGROUND**

On April 29, 2015, Plaintiff Staci Watkins (hereinafter "Plaintiff") initiated the above captioned civil action alleging a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). (Plaintiff's Complaint, ECF No. 1, hereinafter "Compl."). Specifically, Plaintiff alleges that Defendant Synchrony Bank f/k/a GE Capital Retail Bank (hereinafter "Defendant") violated the TCPA by (1) initiating multiple automated telephone calls to Plaintiff's cellular telephone;

1

(2) for non-emergency purposes; (3) without Plaintiff's prior express consent and, after August 2014, subsequent to Plaintiff revoking previous consent; and (4) with malicious, intentional, willful, reckless, wanton, and negligent disregard for Plaintiff's rights and with the purpose of harassing Plaintiff. *Id.* ¶¶ 28-31.

According to the facts as set forth within Plaintiff's Complaint, Defendant repeatedly contacted Plaintiff from May 2014 through September 2014 using an automated telephone dialing system. *Id.* ¶¶ 13-14. These automated messages identified "Walmart Credit Services," of Synchrony Bank as the caller, and are alleged by Plaintiff to have been for non-emergency purposes. *Id.* ¶¶ 15-16. In August 2014, Plaintiff contacted and advised Defendant's representatives to stop calling her cellular phone. *Id.* ¶ 18. However, because of continued calls from Defendant, Plaintiff retained counsel who, on August 11, 2014, sent written correspondence advising Defendant to cease and desist all further attempted communications. *Id.* ¶¶ 21-22. Plaintiff alleges that calls from Defendant continued thereafter until September 12, 2014, and that she suffered damages under the Telephone Consumer Protection Act because she incurs a charge for incoming telephone calls. *Id.* ¶¶ 25, 12.

In response to Plaintiff's Complaint, Defendant filed an Answer to the Complaint, Affirmative Defenses and Counter-Complaint on June 29, 2015.

(Defendant's Answer, ECF No. 6, hereinafter "Answer"). In the aforementioned counter-complaint, Defendant alleges a state law breach of contract claim against Plaintiff.[1] *Id.* ¶¶ 11-16. The following allegations concerning Defendant's breach of contract counterclaim are taken from Defendant's Counter-Complaint and are accepted as true for purposes of deciding Plaintiff's Rule 12(b)(1) Motion to Dismiss.

Specifically, Defendant alleges that, on or around October 13, 2013, Plaintiff entered into a contract for a Wal-Mart credit card and was provided with a cardholder agreement. *Id.* ¶¶ 6-7. Plaintiff subsequently incurred charges of $682.28 on this Wal-Mart credit card account. *Id.* ¶ 8. Although the Wal-Mart Cardholder Agreement required monthly payments, Plaintiff's account became past due on March 24, 2014. *Id.* ¶¶ 9-10. Based on these allegations, Defendant Synchrony Bank alleges a breach of contract counterclaim and seeks recovery of actual damages and attorney fees and costs. *Id.* ¶ 14.

On July 7, 2015, Plaintiff filed a Motion to Dismiss Defendant's Counterclaim Pursuant to FED.R.CIV.P. 12(b)(1). (ECF No. 8). This Motion has since been fully briefed and is now ripe for disposition.

---

[1] Defendant's counter-complaint follows its' formal Answer and begins with fresh numbering. For purposes of this document, all numerals referencing Defendant's Answer refer specifically to the counter-complaint section beginning on page 14.

## II. DISCUSSION

### A. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action where the court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). A moving party may challenge subject matter jurisdiction by either facially or factually attacking the opposing party's[2] assertion of jurisdiction. See Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In a facial attack, the moving party challenges whether jurisdiction has been properly pled by the opposing party. Id.; Jarman v. Capital Blue Cross, 998 F.Supp.2d 369, 374 (M.D. Pa. 2014) (Conner, C. J.). In evaluating the merits of a facial attack, the court is limited to consideration of the allegations within the complaint along with any referenced and attached documents. Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir.2000) (citing Mortensen, 549 F.2d at 891). These allegations are viewed in the light most favorable to the non-moving party. Id.

A factual attack under Rule 12(b)(1), however, challenges subject matter jurisdiction in fact outside merely allegations within the complaint. Mortensen, 549 F.2d at 891. When a moving party makes a factual attack, the court is "free to

---

[2] In the instant case, Plaintiff is moving for the dismissal of Defendant's counter-claim. All references to "moving party" and "opposing party/non-moving party" will therefore refer to Plaintiff and Defendant, respectively.

weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id.; Jarman, 998 F.Supp.2d at 374. Furthermore, unlike a facial attack, the court can freely weigh the allegations of the complaint and "affidavits, documents, and even limited evidentiary hearings" without a presumption of truthfulness. Turicentro, S.A. v. American Airlines, Inc., 303 F.3d 293, 300 n. 4 (3d Cir. 2002).

B. DISCUSSION

Within her Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1), Plaintiff contends that the Court must dismiss Defendant's state law breach of contract counterclaim for lack of subject matter jurisdiction. Plaintiff specifically alleges that, although this Court has original jurisdiction of her TCPA claim under 28 U.S.C. § 1331, it cannot exercise supplemental jurisdiction over Defendant's state law counterclaim.[3]

Counterclaims, within the Federal Rules of Civil Procedure, can be either "compulsory" or "permissive." See FED.R.CIV.P. 13. "Compulsory" counterclaims are defined as those "aris[ing] out of the same transaction or occurrence that is the subject matter of the opposing party's claim." FED.R.CIV.P. 13(a)(1)(A). If a counterclaim does not arise from the same transaction as the opposing party's

---

[3] Under 28 U.S.C. § 1367(a), a district court may exercise supplemental jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."

5

claim, it is deemed a "permissive" counterclaim. FED.R.CIV.P. 13(b). This distinction concerning the nature of counterclaims is dispositive when applied to the determination of supplemental jurisdiction. For instance, compulsory state law counterclaims can be adjudicated in federal court under supplemental jurisdiction. Moore v. New York Cotton Exchange et al., 270 U.S. 593, 610 (1926); Ambromovage v. United Mine Workers of America, 726 F.2d 972, 990 (3d Cir. 1984). Permissive state law counterclaims, however, can only be adjudicated by a federal court within the Third Circuit following a "three-tiered analysis" designed to balance the benefits of increased judicial economy with principles of federalism. Ambromovage, 726 F.2d at 989.

This three-tiered analysis concerning state law claims inquires specifically: (1) whether there is a "common nucleus of operative fact" between the state and federal claims; (2) whether the exercise of jurisdiction at issue would violate a particular federal policy decision; and (3) whether there are prudential reasons bearing on the appropriateness of hearing the state law claim. Id. at 989-90.

In the instant Motion to Dismiss, Plaintiff alleges that this Court cannot exercise supplemental jurisdiction over Defendant's breach of contract claim because it is a "permissive" counterclaim which does not share "a common nucleus of operative fact" with Plaintiff's federal claim. In response, Defendant argues that

6

its state law counterclaim is "compulsory" or, at the very least, a "permissive" counterclaim arising from the same operative facts as Plaintiff's TCPA claim. Because "compulsory" counterclaims by their very nature confer supplemental jurisdiction, this Court will begin by analyzing whether Defendant's breach of contract claim fits within that definition.

    1.    <u>Defendant's Breach of Contract Counterclaim is not Compulsory</u>

As a preliminary matter, this Court notes that, within the Third Circuit, a counterclaim is deemed compulsory where it bears a "logical relationship to an opposing party's claim." <u>Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.</u>, 292 F.3d 384, 389 (3d Cir. 2002)(quoting <u>Xerox Corp. v. SCM Corp.</u>, 576 F.2d 1057, 1059 (3d Cir. 1978)). Viewed liberally by courts in a effort to promote judicial economy, this "logical relationship" test is satisfied where separate trials would "involve a substantial duplication of effort and time by the parties and the courts." <u>Id.</u> A "substantial duplication of effort" is, in turn, likely to occur when claims involve (1) the same factual issues, (2) the same factual and legal issues, or (3) are offshoots of the same basic controversy between the parties. <u>Transamerica</u>, 292 F.3d at 390 (citing <u>Xerox</u>, 576 F.2d at 1059).

Applying the "logical relationship" test to the instant counterclaim, this Court finds that Defendant's breach of contract claim is not logically related to

Plaintiff's federal TCPA claim. This conclusion is reached based on an analysis of case law within the Third Circuit concerning the relationship between similar consumer protection acts and breach of contract claims, and case law concerning the relationship between TCPA and breach of contract claims. Specifically, the Court notes that district courts within the Third Circuit have generally found that breach of contract counterclaims are not compulsory when brought in response to Fair Debt Collection Practices Act ("FDCPA") claims. See, e.g., Kimmel v. Cavalry Portfolio Services, LLC, 747 F.Supp.2d 427, 432 (E.D. Pa. 2010) (Buckwalter, J.) (finding that a breach of contract counterclaim made in response to an FDCPA is not compulsory); Orloff v. Syndicated Office Systems, 2003 U.S. Dist. LEXIS 15466 (E.D. Pa. 2003) (Surrick, J.) (holding that the defendant's breach of contract counterclaim was not compulsory because the factual and legal issues raised are different from those raised by the FDCPA); Ayres v. National Credit Management Corp., 1991 U.S. Dist. LEXIS 5629 (E.D. Pa. 1991) (Gawthrop, J.) ("No such [logical] relationship exists between plaintiff's FDCPA claim and defendant's claim on the debt."). The Court finds these cases highly persuasive toward the ultimate conclusion that Defendant's instant counterclaim is not compulsory.

In Ayres, for example, Judge Gawthrop found no logical relationship

between the FDCPA claim and the breach of contract counterclaim because "a cause of action on the debt arises of events different from the cause of action for abuse in collecting." Ayres, 1991 U.S. Dist. LEXIS 5629 at *4. The Ayres court reached this conclusion by finding that the breach of contract claim centers on evidence regarding the existence and failure to perform under a contract, while the FDCPA centers on evidence regarding "improprieties and transgressions" used in the collection of the debt. Id. The Court finds a similar lack of "logical relationship" between a TCPA claim and breach of contract counterclaim. The Court specifically notes that a breach of contract counterclaim centers on evidence regarding the existence and failure to perform under a contract, while Plaintiff's TCPA claim centers on evidence concerning the abuse of an automated telephoning dialing system. Because adjudication of each claim would necessarily involve the introduction of separate evidence, the Court impliedly notes that a "substantial duplication" of effort would not arise from trying these two claims in separate forums.

In Defendant's brief in opposition to Plaintiff's Motion to Dismiss, it cites Miller v. 3G Collect, LLC for the proposition that a breach of contract counterclaim is compulsory when brought in response to a TCPA claim. In Miller, Judge Buckwalter found that, although court decisions concerning the disposition

9

of counterclaims made in response to FDCPA "appear to dictate the appropriate outcome in this matter," the provision within the TCPA allowing for automated telephone calls subsequent to prior consent is a key distinction with the FDCPA which ultimately makes the breach of contract counterclaim compulsory. Miller v. 3G Collect, LLC, 302 F.R.D. 333, 337 (E.D. Pa. 2014) (Buckwalter, J.).

While this finding would appear persuasive, the Court finds a key distinction between Miller and the instant case. In Miller, the defendant's breach of contract counterclaim was based on the contract formed from a collect call to which the plaintiff expressly consented through a series of automated prompts. Id. at 334. The Miller court notes that, if the defendant proves in its breach of contract counterclaim that the plaintiff consented to the collect call, it would effectively defend against Plaintiff's TCPA claim which relies on a lack of such consent. Id. at 338-39. Therefore, because proof of an element key to the defendant's counterclaim would serve as a defense against the plaintiff's TCPA claim, the Miller court found a "logical relationship" between the two legal claims. It subsequently denied dismissal in the interests of judicial economy.

The case at hand does not present a similar overlap of legal issues. Specifically, the instant breach of contract counterclaim does not involve a contract

formed as a result of the telephone calls at issue in the underlying TCPA claim. Rather, the counterclaim alleges the breach of a contract formed prior to the automated telephone calls here. In this regard, Defendants' counterclaim resembles those at issue in the Kimmel, Orloff, and Ayres cases. Therefore, because the Court finds these cases highly persuasive, it adopts their reasoning and finds that Defendant's counterclaim is not compulsory.

    2.    <u>Defendant's Permissive Breach of Contract Counterclaim Does Not Arise from the Common Nucleus of Operative Fact</u>

Despite finding that Defendant's breach of contract counterclaim is not compulsory, the Court may still exercise supplemental jurisdiction over Defendant's counterclaim if it is found to arise from a "common nucleus of operative fact" with Plaintiff's claim. Ambromovage, 726 F.2d at 990 (quoting United Mine Workers v. Gibbs, 383 U.S. 715 (1966)). Furthermore, as previously outlined, a court within the Third Circuit must also determine whether the exercise of jurisdiction at issue would violate a particular federal policy decision, and whether there are prudential reasons bearing on the appropriateness of hearing the state law claim. Ambromovage, 726 F.2d at 989-90. Based on this three tiered analysis' application to instant case, the Court finds that it does not have supplemental jurisdiction over Defendant's permissive state law counterclaim.

First, the Court finds that Defendant's breach of contract counterclaim does not share a "common nucleus of operative facts" with Plaintiff's TCPA claim. In the instant action, Plaintiff alleges in support of her TCPA claim that Defendant made continuous automated telephone calls without her prior consent and for non-emergency purposes. Defendant's breach of contract counterclaim, however, alleges the formation of a contract, subsequent breach of said contract, and ensuing damages. Although Defendant's actions were undoubtedly driven by its desire to collect the underlying debt, Plaintiff's claim and Defendant's counterclaim do not share a common nucleus of operative fact because both parties would be required to allege facts which are chronologically separate and unique to each cause of action.

As the Ayres court discussed, a defendant's counterclaim for debt collection is "truly tangential" to a plaintiff's FDCPA claim despite the debtor-creditor relationship common to both claims. Ayres, 1991 U.S. Dist. LEXIS 5629 at *11. Although the instant case involves the TCPA and not the FDCPA as in Ayres, this Court similarly finds that any determination of underlying debt is "truly tangential" to the disposition of Plaintiff's federal claim.

Second, the Court's exercise of supplemental jurisdiction over Defendant's

breach of contract counterclaim would likely frustrate the federal policy of deterring automated telephone calls embodied within the TCPA. Specifically, if the Court were to exercise supplemental jurisdiction over counterclaims for collection of the underlying debt involved in TCPA claims, prospective plaintiffs would potentially be discouraged from bringing forth meritorious TCPA claims for fear of such counterclaims. In Ayres v. National Credit Management Corp., that court reached a similar finding concerning the possible frustration of policy underlying the FDCPA. Specifically, the court found that:

> To allow defendants to assert counterclaims upon the debts underlying FDCPA actions "would impede expeditious enforcement of the federal penalty," by discouraging plaintiffs from bringing meritorious claims in federal courts.

Ayres, 1991 U.S. Dist. LEXIS 5629 at *14 (quoting Leatherwood v. Universal Business Service Co., 115 F.R.D. 48, 50 (W.D. N.Y. 1987)). Following the same reasoning, this Court finds, pursuant to the Third Circuit's three tiered analysis, that the federal policy underlying the TCPA discourages the exercise of supplemental jurisdiction over a breach of contract counterclaim.

## III.  CONCLUSION

Having determined that Defendant's breach of contract counterclaim is both permissive and outside the "common nucleus of operative fact" of the underlying

13

federal claim, the Court is without supplemental jurisdiction to adjudicate said counterclaim. Plaintiff's Motion to Dismiss Defendant's Counterclaim Pursuant to FED.R.CIV.P. 12(b)(1) is hereby granted.

An appropriate Order follows.

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge